### ADYE v. HANNA ET AL.

1. **Attorney**: CONTRACT WITH CLIENT: PUBLIC POLICY. An attorney contracted to pay any judgment which should be finally rendered against his client in a certain suit, in consideration that the latter would appeal the case, and pay the attorney a fee for conducting the same: *held* that such contract was void, as against public policy, and could not be enforced in the hands of either attorney or client.

*Appeal from Louisa Circuit Court.*

THURSDAY, DECEMBER 6.

ACTION at law upon an obligation in the following words: "*Know all men by these presents*: That we, R. H. Hanna as principal, and O. E. Hobbie as surety, are held and firmly bound unto Henry Adye in the sum of one hundred and twen-

ty dollars, and to the payment thereof hereby bind ourselves and our legal representatives.

Dated, Columbus Junction, Iowa, December 22, 1874.

The conditions of the above bond are such that, whereas, the said Henry Adye has this day appealed from the judgment of A. Owen, justice of the peace, in an action wherein Augustus Reynolds is plaintiff, and Henry Adye is defendant, rendered on the eighth day of December, A D. 1874. Now if the said Adye shall perfect said appeal, and pay to Hanna, Bird & Tatlock twenty-seven and 50-100 dollars, as attorneys, for prosecution of the same in the Circuit Court, then said Hanna, Bird & Tatlock agree to pay whatever judgment is obtained against said Henry Adye, and abide the order and judgment of the court in the premises, and in case judgment is rendered against plaintiff in favor of defendant, then this bond to be void, otherwise of full force and effect.

[Signed]                    R. H. HANNA,
                            O. E. HOBBIE."

The petition alleges that the conditions imposed by the terms of the instrument upon plaintiff, namely, the appealing of the action contemplated, and the payment to defendant of the sum provided for, were performed by plaintiff, and that judgment was rendered against him, which he was compelled to pay; it also avers the failure and refusal of the attorneys, Hanna, Bird & Tatlock, to perform their obligation by the payment of such judgment, or by the reimbursement of plaintiff for the sum paid by him. A demurrer to the petition was sustained, and judgment thereon was rendered for defendant. Plaintiff appeals.

*D. C. Cloud,* for appellant.

*Tatlock & Wilson,* for appellees.

BECK, J.—I. The demurrer to the petition was sustained in the court below on the ground that the instrument sued upon embodies a contract which is void for maintenance and champerty. The ruling is assigned for error, and presents the only question in the case.

It becomes necessary to consider, for a moment, the considerations of the bond which is the foundation of the action. The defendants are obligated thereby to pay whatever judgment may finally be recovered in an action wherein the obligee of the bond is the defendant. They are bound for the payment of fess of witnesses and other costs as well as the judgment for damages, for the costs are a part of the judgment. The conditions to be performed by the obligee are the appealing of the case and the payment of $27.50. The obligors are the attorneys of the obligee, employed for the defense of the action, and the sum to be paid them is their fee or compensation for the services, as well as a part consideration of the bond. The obligors, defendants in this action, bind themselves as attorneys for the obligee to pay the judgment, including costs, that may finally be recovered against their client, in consideration of a fee to be paid them. This is the effect of the contract sued upon.

II. In this state crimes and misdemeanors are prescribed by statute, and do not exist under the common law. We have no statute prescribing the offenses of maintenance and champerty and providing punishment therefor. The contract of the parties cannot, therefore, be declared void on the ground that it is champertous or made for the purpose of unlawfully maintaining a suit at law. We need not, therefore, inquire whether the contract comes within the common law offense of maintenance, or the species of that offense called champerty. Were we to hold that the contract is void because it creates an obligation, the performance of which would amount to a violation of the criminal law of the state, we would, in that case, be required to show that the act of the obligor contemplated in the bond comes within the terms of the law prescribing an offense. If we find, however, that the obligations of the parties as found in the bond sued upon are in contravention of public policy, having a tendency to obstruct, prevent or interfere with the administration of justice, we will be required to hold the instrument invalid, and incapable of being enforced in a court of law.

III. The instrument in suit binds attorneys who are employed to defend an action to hold their client harmless of any judgment that may be entered against him, for a compensation

agreed upon. The attorneys thus become the *insurers* to their client of success in the litigation. If the bond is held valid the client may conduct his defense without risk or fear of loss. He can have no more powerful stimulus to litigation, and no more effective restraint upon inclination and efforts to settle the litigation in which he is involved. But the policy of the law discourages litigation and encourages settlements of lawsuits. The contract is clearly and directly in contravention of such policy.

IV. In another respect it is in conflict with the policy of the law which promotes and upholds purity and justice in the administration of remedies in the courts. The attorneys bound by the contract become liable in place of their client. They have the most powerful motive to pervert justice and corrupt its source, in order to escape the liability they have assumed. They are officers of the court, and as such ought to be trusted by judges as well as clients. Their duty does not require them to pervert the law, or deceive those clothed with the power to administer it. On the contrary, it forbids them, under the heaviest penalties, to do any act that may have such an effect. They are to aid the courts in the administration of justice. Their duty requires them to endeavor to secure to their client his rights under the law, and nothing more. For such services the law will secure them compensation from their clients. It requires neither arguments nor explanations to show what great temptations would be placed before the attorney to violate his duty, and to endeavor to corrupt the fountain of justice, were he to take the place of his client and become responsible for all liabilities incident to a decision adverse to him. The law will not permit members of the legal profession to be assailed with temptations so dangerous in their character. They have the most grave duties to perform in the administration of justice; they stand before the world, as a class, distinguished for honor, integrity, and public virtue. The law will be careful to recognize no rules or principles which, in their application to the practice of the courts or business of attorneys, may tend to corrupt the legal profession, or rob it of the high character it has always maintained.

We conclude that the bond in suit is, by its very terms and conditions, in contravention of public policy, and cannot be enforced in the courts of this State. These views are amply supported by *Boardman & Brown v. Thompson*, 25 Iowa, 488, where the subject is fully discussed.

V.  The fact that the attorneys in this case seek to avoid their contract cannot take it out of the operation of the principle above announced.  No reason can be given why a champertous contract, or a contract against public policy which the attorney cannot enforce against his client may be enforced against him.  The contract is equally vicious whether in the hands of client or attorney, and in neither can be enforced. The client is not an innocent party; he has no right in law or morals to attempt, by contracts of this kind, to pervert the course of justice by laying before his attorneys temptations and incentives for unprofessional and unlawful conduct.  He is not entitled to the favor of the court.

VI.  But it is insisted that, as plaintiff has paid the defendants the money named in the bond, it is a hardship to deny to him the right of enforcing it.  As we have said, he is a violator of the law, and entitled to no sympathy.  He ought not to be surprised by the refusal of defendants to perform the contract, for it is, doubtless, a rule, subject to rare exceptions, that attorneys who would enter into such contracts would violate them.  The want of professional honor which would permit a lawyer to make a contract of this kind would be accompanied, in most cases, by those traits that would prompt them to interpose, as a defense thereto, its illegality.

                                        AFFIRMED.